UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br> v.<br><br>RICHARD WARD,<br><br>   Defendant. | Case No. 20-cr-40101-JPG |

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant Richard Ward's *pro se* original and amended motions for compassionate release pursuant to the First Step Act of 2018, Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239 (2018) (codified at 18 U.S.C. § 3582(c)(1)(A)) (Docs. 43 & 51). The Government has responded (Docs. 47, 48 & 49), and Ward has replied (Doc. 50).

**I. Compassionate Release**

The First Step Act expanded the existing compassionate release provisions of federal law by opening the door for a defendant to move for compassionate release rather than only allowing the Director of the Bureau of Prisons ("BOP") to so move. First Step Act, § 603(b)(1) (codified at 18 U.S.C. § 3582(c)(1)(A)); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The relevant portion of the law provides:

> **(c) Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
>  (1) in any case—
>    (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of

> probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> > (i) extraordinary and compelling reasons warrant such a reduction. . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. . . .

18 U.S.C. § 3582(c)(1)(A).

As for the final clause of § 3582(c)(1)(A), there is no applicable Sentencing Commission policy statement regarding motions for compassionate release filed by defendants. *Gunn*, 980 F.3d at 1180. The existing compassionate release policy statement, United States Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13, applies only to motions filed by the BOP, not defendants themselves, "[a]nd because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion." *Id.* Nevertheless, the substantive aspects of U.S.S.G. § 1B1.13 provide a "working definition" of "extraordinary and compelling reasons" that should guide the Court's discretion without strictly confining it. *Id.* A court that "strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id.* Additionally, the Court should give substantial weight to the BOP's analysis regarding "extraordinary and compelling reasons" in any particular case. *Id.*

So the Court looks to U.S.S.G. § 1B1.13 for guidance. That policy statement adds the provision that the defendant must not be a danger to the safety of any other person or to the community. U.S.S.G. § 1B1.13(2).[1] The application notes further define "extraordinary and

---

[1] This provision is similar, but not identical, to 18 U.S.C. § 3553(a)(2)(C), which requires the Court to consider the need for the sentence "to protect the public from further crimes of the defendant."

compelling reasons" to include, as relevant for this case:

> **(A)** **Medical Condition of the Defendant.—**
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> (ii) The defendant is—
> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> * * *
>
> **(D)** **Other Reasons.—**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n. 1.

Thus, for a defendant to be eligible for compassionate release he must have exhausted his administrative remedies,[2] and the Court must find that (1) extraordinary and compelling reasons for release exist, and (2) considering the applicable factors in 18 U.S.C. § 3553(a), the extraordinary and compelling reasons warrant release. 18 U.S.C. § 3582(c)(1)(A). The movant bears the burden of making such a showing, and the Court has discretion to determine whether the defendant satisfied that burden. *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021); *Gunn*, 980 F.3d at 1180. The Court uses U.S.S.G. § 1B1.13 cmt. n. 1 to guide its discretion in this regard and should give great weight to the BOP's analysis regarding "extraordinary and

---

[2] The exhaustion requirement is not jurisdictional and may be waived by the Government. *Gunn*, 980 F.3d at 1179.

compelling reasons," if it has given any such analysis. *Gunn*, 980 F.3d at 1180. The Court now turns to the specifics of the defendant's case.

**II.    Analysis**

In May 2021, Ward pled guilty to one count of solicitation of child pornography in violation of 18 U.S.C. § 2252A(a)(3)(B)(ii). At Ward's sentencing in September 2021, the Court found his base offense level was 22. His offense level was raised by 2 points under U.S.S.G. § 2G2.2(b)(2) because the material involved a prepubescent minor, and by 2 points under U.S.S.G. § 2G2.2(b)(6) because the offense involved the use of a cell phone connected to the internet. His offense level was decreased by 3 points under U.S.S.G. § 3E1.1 for acceptance of responsibility, yielding a total offense level of 23.

Considering Ward's criminal history category of I (he had no criminal history points at all), this yielded a guideline sentencing range of 46 to 57 months. However, the statutory mandatory minimum sentence for the offense was 5 years, so his guideline range was effectively 60 months. *See* U.S.S.G. § 5G1.1(b). In selecting a sentence, the Court considered Ward's extensive history of medical and mental/emotional conditions as listed in his PSR ¶¶ 46-49. The Court sentenced him to 60 months in prison. Ward's projected release date is January 20, 2026. *See* BOP, Find an Inmate, https://www.bop.gov/inmateloc/ (visited Oct. 24, 2022).

Having served less than a year in prison at the time of his motion, Ward asks the Court for compassionate release, a reduction in sentence, or home confinement. He argues that his numerous medical problems can be more quickly treated at no cost to the Government (except what Medicare would pay) if he were at home instead of in prison. He suggests he is at higher risk for serious complications from COVID-19 in light of his health conditions. He also argues that bad conditions in the prison—the presence of mold, asbestos, and lead paint—pose a deadly

threat to him. He notes he had no criminal history before his conviction and his successful compliance with his bond condition before his self-surrender after his guilty plea. He also points to a magistrate judge's finding in connection with pretrial detention that Ward was not a danger to the community. He argues that he has learned his lesson, is at low risk of recidivism, and poses no threat to society.

In response, the Government argues that Ward's health conditions, even in combination with the COVID-19 pandemic, do not amount to an extraordinary and compelling reason for release. Ward has been vaccinated and boosted against COVID-19 and, when he did contract it, he was asymptomatic. It further notes he is currently housed in a medical facility that is treating his many ailments without complaint from him, and he has only vaguely asserted without explanation that his ailments amount to an "extraordinary and compelling" reason for release. That facility—the Federal Medical Center at Lexington, Kentucky ("FMC-Lexington")—had no inmates testing positive for COVID-19 at the time of the Government's response. The Government further notes the Court already adequately considered Ward's health conditions when it sentenced him. As for the conditions of confinement at FMC-Lexington, the Government notes that Ward has cited no evidence to support that claim, and no complaints about the conditions' impacting his health are noted in his medical records. Finally, the Government finds feeble Ward's statement that he has learned his lesson, and it urges the Court to deny compassionate release based on the § 3553(a) factors.

As a preliminary matter, it is clear that the defendant has satisfied his obligation to exhaust his administrative remedies before filing his motion. On November 2, 2021, the defendant asked the warden to move on his behalf for compassionate release, and the warden denied that request on November 8, 2021.

As for the defendant's physical condition, the Court does not dispute that he suffers from serious health conditions that make him especially susceptible to the dangers of COVID-19. However, he has been fully vaccinated and boosted, and he has not shown he is unable to benefit from that vaccination. "A prisoner who can show that he is unable to receive or benefit from a vaccine still may turn to [the compassionate release] statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021); *accord United States v. Kurzynowski*, 17 F.4th 756, 760-61(7th Cir. 2021); *United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021) (recognizing "prisoners who have access to a vaccine cannot use the risk of COVID-19 to obtain compassionate release"). Granted, *Broadfield* was decided prior to the Omicron variant becoming prevalent, but *Broadfield*'s principles remain true: to show extraordinary and compelling circumstances, an inmate must show he remains vulnerable to severe infection—from Omicron or any other variant—notwithstanding his receiving the maximum vaccine protection available. *See United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022). For Ward, the danger from COVID-19 no longer presents an extraordinary and compelling reason for release.

As for Ward's medical conditions by themselves, he is being treated for those conditions by the BOP, as the 400+ pages of prison medical records from just the past year demonstrate. He has not shown that the quality of the treatment the BOP is able to offer justifies compassionate release. Additionally, the Court was aware of the state of Ward's health as well as the COVID-19 pandemic when it sentenced him. Although the Court was obligated to impose the statutory minimum sentence of 5 years, it took into consideration his health conditions and the dangers

prisoners often face from COVID-19 when deciding not to impose an even higher sentence.

As for the conditions of Ward's confinement, including exposure to mold, asbestos, and lead paint, he may seek relief from any unconstitutional conditions through an administrative remedy and then a conditions of confinement lawsuit.  The Court does not find those conditions justify compassionate release.

Even if there were extraordinary and compelling reasons for compassionate release, the § 3553(a) factors continue to counsel in favor of Ward's full sentence.  Ward's offense was, as he states in his amended motion, "morally putrid."  The Court also received other information suggesting the offense of conviction might not have been the only time Ward had committed such reprehensible conduct, although his criminal history was without blemish.  And while the Court is pleased to hear Ward's expressions of remorse, words are easy to say, but a reformed life is more difficult to live.  There is a reason Congress established a 5-year mandatory minimum sentence; such crimes are anathema to society, and those who commit them deserve to serve serious time.  Additionally, they need prison programming to develop skills to reduce the risk of recidivism once they are released.  Ward needs more than a year to benefit from those programs and to become a responsible member of society with the skills to head off future criminal temptations that would place the public in danger.  Releasing him after serving a little more than one year of his sentence would undermine the gravity of his offense, would not promote respect for the law, and would deprive him of necessary rehabilitation opportunities.

Ward also asks the Court, as an alternative, to order him placed on home confinement. The Court does not have jurisdiction to entertain such a request. "After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence." *United States v. Wilson*, 503 U.S. 329, 335 (1992).  The BOP then

has "plenary control" placement of the inmate, subject only to statutory limits. *Tapia v. United States*, 564 U.S. 319, 331 (2011); *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021). This includes the decision whether to house an inmate in a prison or in home confinement, 18 U.S.C. § 3624(c)(2), and the Court has no jurisdiction to review that decision, 18 U.S.C. § 3621(b) ("Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court."). *Saunders*, 986 F.3d at 1078 (noting that a court lacks authority to change an inmate's place of imprisonment, although it may recommend a different placement). The defendant may seek relief from the BOP by filing an administrative remedy, but the Court cannot help him.

### III.   Conclusion

For all of these reasons, the Court **DENIES** the defendant's motion for compassionate release (Docs. 43 & 51).

**IT IS SO ORDERED.**
**DATED:  October 28, 2022**

                                            s/ J. Phil Gilbert
                                            **J. PHIL GILBERT**
                                            **DISTRICT JUDGE**